IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER WARNER,

    Plaintiff,

v.

UNITED NATURAL FOODS, INC.,

    Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## **COMPLAINT**

COMES NOW, Plaintiff, Christopher Warner ("Plaintiff" or "Warner"), by and through undersigned counsel, and files this Complaint for Damages against Defendant United Natural Foods, Inc. ("Defendant" or "UNFI"), and states as follows:

## **NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant United Natural Foods, Inc. ("Defendant") for violations of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA").

**JURISDICTION AND VENUE**

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

3.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

**ADMINISTRATIVE PREREQUISITES**

4.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination in violation of the ADA. The EEOC issued a "Notice of Right to Sue" on February 22, 2022, entitling an action to be commenced within ninety (90) days of receipt of that notice.

5.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## PARTIES

6.

Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

Defendant is and has been, at all times relevant to this Complaint, an employer as defined under 42 U.S.C. § 12111(5)(A), is qualified and licensed to do business in Georgia, and has conducted business within this District.

8.

At the time period relevant to this Complaint, Plaintiff was an employee of Defendant as that term is used under the ADA at 42 U.S.C. § 12111(4).

9.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

10.

Defendant may be served with process by delivering a copy of the summons and complaint to its registered agent, C T Corporation System, 289 S Culver St., Lawrenceville, GA 30046-4805.

11.

Defendant has now, and at all times relevant hereto, has been an employer subject to the Americans with Disabilities Act ("ADA").

## FACTUAL ALLEGATIONS

12.

On or about September 9, 2020, Warner applied for a position with the Defendant company United Natural Foods, Inc.

13.

Warner suffers from a disability, within the meaning of the ADA, of which Defendant had actual knowledge.

14.

On September 14, 2020, Ximena Soehner, Talent Acquisition Partner, called Warner for an initial employment screening and to invite him to come in on September 15, 2020 for an interview.

15.

After the call, on September 14, 2020, Soehner followed up via email with Warner to confirm the interview for the next day and let him know that he would be interviewing with the Operations Team.

16.

On September 15, 2020, Warner met with Ray Tony Gallahar for about forty-five minutes.

17.

Warner asked Gallahar if he would be working in a hot to cold environment. Warner told Gallahar that he was anemic and wanted to clarify what he would be doing for the company.

18.

On September 17, 2020, Soehner called Warner, and let him know that UNFI would be extending an offer to him, and she stated that it would be two to three weeks to complete the background and drug test.

19.

On the phone with Soehner, Warner accepted the offer and they confirmed a date of October 12, 2020, as a start date.

20.

Later on September 17, 2020, Warner received an offer letter from UNFI, offering him the position of Receiver at $17.00/hour via email. In that same email, Danielle Sullivan, Talent Acquisition Coordinator, also sent Warner information on

the post-offer process and on his employment benefits. Sullivan stated that Soehner would follow up to schedule his orientation with him.

21.

On September 17, 2020, Warner accepted the offer of employment and began the background check and drug screening process as Soehner had previously discussed with him.

22.

Warner returned all of the required forms and accepted the job offer.

23.

On or about September 23 or 24, 2020, after the drug screening and background check came back clear, Warner spoke with Sullivan who informed him for the first time that he needed to complete a medical exam to complete the hiring process.

24.

Warner was surprised to learn that he would need to have a medical exam because it was not mentioned to him in the interview or in any of the documents about the post-offer process, including the waiver that he signed.

25.

On or about September 24, 2020, Warner was required by Defendant to undergo a physical examination at WorkWell to complete the hiring process.

26.

On his prework screen health history questionnaire, in response to the question "Do you have any medical conditions that make working in cold climates difficult? If 'Yes,' Explain" Warner "X" the box for "Yes" and disclosed his specific physical disability by name.

27.

On the questionnaire, under the space where Warner answered, the form states "If 'Yes', fax a copy of this Health History Questionnaire to UNFI-Atlanta @ (404) 346-1256. Continue testing."

28.

The attending medical provider from WorkWell stated that she had to send over all the paperwork to the company.

29.

Warner also listed the medication that he takes on the form, which is a medicine only used for this particular disability.

30.

Following his physical, Warner did not hear from Soehner again to discuss the next steps.

31.

On October 9, 2020, Warner emailed Soehner and asked for the status of his employment, stating that he had received documents by mail and email but hadn't received any further details for start date or his employee numbers. Plaintiff received no response.

32.

On October 12, 2020, Warner could not proceed to UNFI for his job because he did not receive any response on his start date.

33.

Between October 19, 2020 and October 23, 2020, Warner called and left a voicemail for Soehner, who had an out of office message on her voicemail box.

34.

On or about October 29 or 30, 2020, Warner called Sullivan, and Sullivan transferred him to Soehner.

35.

On that call, Soehner stated that he failed to attend the orientation so the position was given to someone else.

36.

On November 2, 2020, Warner was informed, by an email from Soehner, that the position had been filled and there were no other available positions for him.

37.

About a month later, Warner went back to the medical facility where he had his exam and requested all of his paperwork. The same attending medical provider stated that she had sent everything over to UNFI after his exam and provided him with a copy.

38.

But for Plaintiff's disability status, he would not have suffered the adverse employment action.

39.

Plaintiff was treated less favorably in the terms or conditions of employment than others outside of his protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for their disability.

40.

Plaintiff has suffered lost wages and emotional distress as a direct result of Defendant's unlawful actions.

**CLAIMS FOR RELIEF**

**COUNT I:**
**DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

41.

Plaintiff re-alleges paragraphs 12-40 as if set forth fully herein.

42.

Plaintiff had a physical impairment which substantially limits one or more major life activities.

43.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

44.

Defendant was aware of Plaintiff's disability.

45.

Defendant regarded Plaintiff as having a disability such that he is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

46.

Plaintiff has a record of having a disability and/or perceived disability such that he is a person with a disability within the meaning of the ADA, as amended.

47.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

48.

Defendant terminated Plaintiff's employment because of his disability, perceived disability, or record of having a disability.

49.

Defendant terminated Plaintiff's employment because of his accommodation requests.

50.

By terminating Plaintiff's employment because of his disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

51.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

52.

Defendant treated other employees outside Plaintiff's protected class differently.

53.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

54.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

55.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his disability.

56.

As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

57.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

58.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

59.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

60.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which may be entitled.


**BARRETT & FARAHANY**

s/ *Grace A. Starling*
Grace A. Starling
Georgia Bar No. 464958

Counsel for Plaintiff Christopher Warner

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
grace@justiceatwork.com